UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
ARKANSAS TEACHER RETIREMENT   )
SYSTEM,                       )
     Plaintiff                )
                              )
                              )   C.A. No. 15-12345-MLW
     v.                       )
                              )
                              )
INSULET CORP. et al.,         )
     Defendants.              )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                              March 31, 2016

This class action securities suit arises under the Securities Exchange Act of 1934, 15 U.S.C. §78a et seq. Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, two putative class members and one group of three putative class members have filed motions for appointment as lead plaintiff. For the reasons explained below, the court is appointing the Institutional Investor Group as lead plaintiff in this action, and approving its selection of Bernstein Litowitz Berger & Grossmann LLP and Scott + Scott LLP as co-lead counsel.

I.   BACKGROUND

On June 16, 2015, the Arkansas Teacher Retirement System ("Arkansas Teacher") filed this class action against Insulet Corporation ("Insulet") and four of its officers. At the time, it was one of three class actions in this district seeking relief from Insulet under the Securities Exchange Act. The other two

actions, 15-cv-1178 ("Murphy") and 15-cv-11855 ("Burns") were voluntarily dismissed on July 2, 2015.

All three complaints alleged that the defendants made false or misleading statements about the sales and performance of Insulet's OmniPod Insulin Management System ("OmniPod"). The plaintiffs, investors in Insulet, allege that they suffered losses when the defendants' misrepresentations were revealed. The only significant difference between the complaints, for the purposes of the current analysis, was the class periods. Murphy and Burns alleged a class period beginning on February 27, 2013, the day on which Insulet issued its 2012 financial results. The complaint in this action alleges a class period starting on May 7, 2013, "the first trading day after Insulet's former CEO Duane DeSisto touted the Company's launch of its new OmniPod system." Complaint ¶3. The three complaints agreed that the class period ended on April 30, 2015, the day Insulet disclosed its first quarter 2015 revenues. See id. at ¶53.

The putative class members described below subsequently filed motions for appointment as lead plaintiffs under the PSLRA. See 15 U.S.C. §78u-4(a)(2). Each movant has filed a memorandum in support of its motion and made the certification necessary to establish that it is eligible to be appointed lead plaintiff. Each movant has also responded to the filings of the other moving parties. It

is now the court's obligation to appoint a lead plaintiff. See id. §78u-4(a)(3)(B).

II. APPLICANTS FOR LEAD PLAINTIFF

   A. The Institutional Investor Group

Arkansas Teacher, the party that filed this action, has moved for appointment of the Institutional Investor Group ("IIG") as lead plaintiffs. The IIG consists of Arkansas Teacher, the City of Bristol Pension Fund ("Bristol"), and the City of Omaha Police and Fire Retirement System ("Omaha Police & Fire"). They seek appointment of Bernstein Litowitz Berger & Grossmann LLP and Scott + Scott LLP as lead counsel.

With the exception of the complaint, the members of the IIG have filed all of their motions in coordination with each other. They have also submitted a joint affidavit signed by officers of each member institution. In the affidavit, the member institutions state that they have consulted regarding their duties during litigation, and have established a plan to communicate by conference call, email, and meetings. They also note that Bristol and Omaha Police & Fire served as joint lead plaintiffs in a PSLRA action in the Northern District of California.

The IIG alleges that, as a group, it purchased approximately 154,000 total shares and, taking sales into account, 79,000 net shares in Insulet during the class period. It alleges net expenditures of more than $2,500,000. Finally, it alleges total

3

losses of approximately $834,000 as calculated on a First-In-First-Out ("FIFO") basis or $330,000 as calculated on a Last-In-First-Out ("LIFO") basis.

B. <u>Alaska Electrical Pension Fund</u>

The Alaska Electrical Pension Fund ("Alaska Electrical") has moved for appointment as the sole lead plaintiff in this case. It seeks appointment of Robbins Geller Rudman & Dowd LLP as lead counsel. Alaska Electrical alleges that it purchased approximately 25,400 total shares in Insulet during the class period. It sold all of these shares during the class period and, therefore, purchased no net shares. It alleges net expenditures of $295,000, and total losses of the same amount, regardless of calculation method.

C. <u>Jefferey Smith</u>

Jefferey Smith is the only individual plaintiff seeking appointment in this action. Although he initially filed a motion for appointment as the sole lead plaintiff, he has since filed a memorandum requesting appointment as co-lead plaintiff with the IIG. He seeks appointment of Glancy Prongay & Murray LLP as co-lead counsel. Smith alleges that he purchased approximately 168,200 total shares, and 32,200 net shares, in Insulet during the class period. He alleges net expenditures of approximately $650,000 and total losses of $110,660.

III. APPOINTMENT UNDER THE PSLRA

Section 101(b) of the PLSRA, codified at 15 U.S.C. §74u-4, governs the appointment of lead plaintiffs in securities class actions. As Judge Patti Saris succinctly explained:

> The purpose of [§101(b)] is to establish new procedures for the appointment of the lead plaintiff and lead counsel in securities class actions. H.R. Conf. Rep. No. 104-369, at 32 (1995) (reprinted in 1995 U.S.C.C.A.N. 730, 731). The legislation responds to congressional concern that "the selection of the lead plaintiff and lead counsel should rest on considerations other than how quickly a plaintiff has filed its complaint," as well as its desire "to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the most adequate plaintiff." Id. at 33-34. This is predicated upon the conclusion that "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." Id. at 34. Expressing a jaundiced view of "unsupervised" plaintiffs' attorneys, the Conference Committee was most hopeful that "the plaintiff will choose counsel rather than, as is true today, counsel choosing the plaintiff." Id. at 35. One key aim was "to empower investors so that they—not their lawyers—exercise primary control over private securities litigation." S. Rep. No. 104-98, at 4, reprinted in 1995 U.S.C.C.A.N. 679, 683.

In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 43 (D. Mass. 2001).

The PSLRA provides for appointment of a lead plaintiff who is "the most capable of adequately representing the interests of the class members," also called the "most adequate plaintiff." 15

5

U.S.C. §78u-4(a)(3)(B)(i). The court must presume that the most adequate plaintiff is "the person or group of persons that--

> (aa) has either filed the complaint or made a motion [for appointment as lead plaintiff];
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

Id. §78u-4(a)(3)(B)(iii)(I). That presumption is rebuttable only on proof "that the presumptively most adequate plaintiff--

> (aa) will not fairly and adequately protect the interests of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

Id. 78u-4(a)(3)(B)(iii)(II). After the court determines the most adequate plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." Id. §78u-4(a)(3)(v).

IV. DISCUSSION

The court has considered the submissions of each movant. For the reasons stated below, the court finds that the IIG is the presumptively most adequate plaintiff in this case. It further finds that no other class member has proven that the IIG cannot adequately represent the class. Accordingly, the court is appointing IIG as lead plaintiff and approving its choice of lead counsel.

A. <u>Presumptively Most Adequate Plaintiff</u>

Each person or group seeking appointment as lead plaintiff has filed a timely motion in response to notice under 15 U.S.C. §78u-4(3)(A)(i). Therefore, each movant satisfies the first PLSRA factor. Accordingly, the remaining two factors are the most significant.

The First Circuit has yet to articulate a test for determining which plaintiff has the largest financial interest. Many courts, including this one, have considered "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered during the class period." <u>In re Olsten Corp. Sec. Litig.</u>, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); <u>State Universities Ret. Sys. of Illinois v. Sonus Networks, Inc.</u>, C.A. No. 06-10040-MLW, 2006 WL 3827441, at *2 (D. Mass. Dec. 27, 2006). Courts using this method often consider approximate loss to be the most important factor. See, e.g., <u>In re Diamond Foods, Inc., Sec. Litig.</u>, 281 F.R.D. 405, 408 (N.D. Cal. 2012).

Other courts have held that "the number of net shares purchased during the class period is determinative" because it equates directly with potential recovery. <u>In re Critical Path, Inc. Sec. Litig.</u>, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001). However, even under the net shares approach, the amount recoverable

may be adjusted for "in/out losses, i.e., losses suffered by selling shares during the class period." Id.

Under either approach, the IIG has the largest financial interest in this case. It purchased the most net shares, expended the most net funds, and suffered the greatest losses under both a FIFO and a LIFO calculation. Smith purchased more gross shares than the IIG. However, he also sold more shares, at less of a loss, during the class period. Therefore, he would recover less in this action if it is successful. Alaska Electrical has less of a financial interest than the IIG under any measurement. Therefore, the court finds that the IIG satisfies the second PSLRA factor.

The court also finds that the IIG satisfies the requirements of Rule 23. At this stage, the IIG need only make a prima facie showing of typicality and adequacy. See In re Cendant Corp. Litig., 264 F.3d 201, 263-64 (3d Cir. 2001); Sonus, 2006 WL 3827441, at *2. The IIG is a typical class member. It "has suffered the same injuries as absent class members, as a result of the same conduct by the defendants." Diamond Foods, 281 F.R.D. at 408 (citing Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)). It is also adequate to represent the class. As a group that has sustained large losses, "it has the ability and incentive to represent the claims of the class vigorously," and it has retained experienced counsel to do so. In re Cendant Corp., 264 F.3d at 265 (internal quotations omitted). Its claims do not conflict with those asserted

on behalf of the class. Id. Moreover, its members are the type of institutional investors the PSLRA encourages be appointed lead plaintiff. See In re Lernout, 138 F. Supp. 2d at 43.

The court finds that, of the three movants, the IIG best satisfies the requirements of the PLSRA. Therefore, it is the presumptively most adequate plaintiff.

B. Arguments in Rebuttal

Having identified the IIG as the presumptively most adequate plaintiff, it is necessary for the court to consider the other movants' arguments in rebuttal. See In re Cendant Corp., 264 F.3d at 264. "[T]he question is not whether another movant might do a better job of protecting the interests of the class than the [IIG]; instead, the question is whether anyone can prove that the [IIG] will not do a fair[ ] and adequate[ ]' job." Id. at 268 (emphasis in original).

Alaska Electrical asserts that the IIG should not be appointed as lead plaintiff for three reasons.[1] First, it argues that the losses of the IIG members should not aggregated to determine the financial interests of the movants. See Alaska Opp. (Docket No.

---

[1] Smith does not contest that the Institutional Investor Group is the most adequate plaintiff in this action. See Smith Opp. (Docket No. 26) at 2-3. His request for appointment as co-lead plaintiff is addressed below in §IV.C.

29) at 6-9. Second, it argues that Arkansas Teacher manipulated the class period to exaggerate its financial interest, at the expense of excluding potential class claims. Id. at 9-12. Finally, it argues that two of the IIG members are subject to unique defenses. Id. at 12-15. For the reasons explained below, these arguments are insufficient to rebut the presumption that the IIG is the most adequate lead plaintiff.

1. The IIG's Adequacy as a Group

Alaska Electrical asserts that the IIG is an improper plaintiff group because it "offers no indication that all of its members shared a pre-existing relationship" and "fails to describe how its members would function cohesively in representing the Class." Alaska Opp. at 7. However, "[i]t is not necessary that proposed lead plaintiffs have a pre-litigation relationship, but rather that they be able to operate in concert and manage the litigation and the lawyers." Howard Gunty Profit Sharing Plan v. CareMatrix Corp., 354 F. Supp. 2d 18, 24 (D. Mass. 2000); see also In re Cendant Corp., 264 F.3d at 266. In making this determination, the court should consider any relevant factors, including pre-existing relationships, and also "how its members would function collectively; [and] the mechanism that its members and the proposed lead counsel have established to communicate with one another about the litigation.'" In re Lernout, 138 F. Supp. 2d at 45 (quoting In

re MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 434-35 (E.D. Va. 2000)).

Alaska Electrical's assertion that the IIG has not described how it would function is incorrect. The IIG members have filed a sworn declaration explaining how and why they intend to work together. See IIG Decl., Ex. C (Docket No. 18-3). They state that they, rather than their counsel, made the decision to move for appointment as a lead plaintiff group. Id. at ¶¶5-7. They also report that they have discussed how duties will be shared among the three organizations and how they will communicate with each other and with lead counsel. See id. ¶¶8-9. They also recognize their duty to direct litigation and monitor lead counsel's actions. Id. ¶10-11. These statements contribute to the conclusion that the IIG is an adequate lead plaintiff. See Goldstein v. Puda Coal, Inc., 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (appointing three-member group based on sworn declarations); In re Lernout, 138 F. Supp. 2d at 45 (same).[2]

---

[2] The court also notes that Arkansas Teacher purchased the most net shares, had the highest net expenditures, and suffered the greatest FIFO losses of any individual movant during the class period. It also had the second highest LIFO losses. Therefore, the court would likely find Arkansas Teacher to have the largest financial interest in this action even without the other members of the IIG. This diminishes the concern that the IIG was formed solely to meet the largest financial interest requirement. See Hodges v. Akeena Solar, Inc., 263 F.R.D. 528, 533 (N.D. Cal. 2009).

11

2. <u>Arkansas Teacher's Proposed Class Period</u>

Alaska Electrical also asserts that Arkansas Teacher filed this action with a shorter class period than that in the <u>Murphy</u> and <u>Burns</u> actions to exaggerate its losses compared to other potential lead plaintiffs. <u>See</u> Alaska Opp. at 9-10. It notes that Smith filed a certification required by the PSLRA, 15 U.S.C. §78u-4(a)(2)(A), using the shorter class period on July 1, 2015, the day before the <u>Murphy</u> complaint was dismissed. <u>Id.</u> It also asserts that Arkansas Teacher declined to release financial information for the longer class period. <u>Id.</u> at 11. Alaska Electrical argues that the "suspicious nature" of these events warrants discovery before appointing the IIG as lead plaintiff. <u>Id.</u> at 11-12.

In support of this argument, Alaska Electrical cites <u>Karam v. Corinthian Colleges, Inc.</u>, 2011 U.S. Dist. LEXIS 157041 (C.D. Cal. Mar. 30, 2011). Arkansas Teacher had the largest financial interest in the <u>Karam</u> action. <u>See</u> <u>id.</u> at *2. Wyoming Retirement System ("Wyoming") had the largest financial interest in an earlier action against the same defendant, which was subsequently dismissed. <u>See</u> <u>id.</u> In <u>Karam</u>, the court held that it could consider both the pending and the dismissed action to determine which movant was the most adequate lead plaintiff. <u>See</u> <u>id.</u> at 3. The court noted that the complaint in <u>Karam</u> inexplicably omitted losses based on a prior partial disclosure by the defendants. <u>See</u> <u>id.</u> Accordingly, it

included the prior partial disclosure in calculating the movants losses, and appointed Wyoming as the lead plaintiff. See id.

The PSLRA requires that each party moving for appointment as lead plaintiff provide a sworn certification that "sets forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. §78u-4(a)(2)(A)(iv) (emphasis added). Nevertheless, some courts have held that, in appropriate circumstances, the most inclusive class period should be used to determine the movants' financial interests in a case. In re Gentiva Sec. Litig., 281 F.R.D. 108, 113 (E.D.N.Y. 2012) (citing cases).

However, these cases are distinguishable from the instant action. In Karam and similar cases, the shorter class period excluded, without justification, disclosures by the defendant that were relevant to the theory of liability in the complaint. See Karam, 2011 U.S. Dist. LEXIS 157041, at *2; In re Gentiva, 281 F.R.D. at 114; see also Nicolow v. Hewlett Packard Co., No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (noting that in Karam and Gentiva, "the longest class period alleged facts relevant to the theories advanced by the movants in the actions still pending before the court").

Here, Arkansas has provided a reason for the starting date for its putative class--it was the first trading day after Insulet's first allegedly deceptive statements. See Complaint ¶22.

Moreover, Alaska Electrical has not explained, let alone proven, how the earlier statements alleged in the Murphy and Burns complaints caused additional losses to any class members. See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 342 (2005) (in fraud-on-the-market cases, "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss"). Therefore, it has not met its burden of proving that IIG is not an adequate class representative.

    3. Arkansas Teacher and Omaha Police & Fire's Defenses

Finally, Alaska Electrical argues that two members of the IIG are inadequate plaintiffs because they are subject to unique defenses. See 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (presumption of adequacy may be rebutted "upon proof . . . that the presumptively most adequate plaintiff . . . is subject to unique defenses that render such plaintiff incapable of adequately representing the class"). Specifically, Arkansas Teacher and Omaha Police & Fire purchased shares after partial disclosures by Insulet on January 7, 2015 and January 14, 2015. See Alaska Opp. at 12-13. Therefore, Alaska Electrical argues, the IIG may be unable to prove reliance on Insulet's alleged fraud. Id. at 13-14.

The fact that an investor has purchased shares after a partial corrective disclosure does not necessarily make that investor an atypical or inadequate class representative. See Feder v. Elec. Data Sys. Corp., 429 F.3d 125, 138 (5th Cir. 2005). Rather, an

14

investor is atypical or inadequate only if it "possessed information that had not been disclosed to the investing public or . . . made a 'disproportionately large percentage' of [its] purchases post-disclosure." Id. (quoting In re DVI Inc. Sec. Litig., 249 F.R.D. 196, 204 (E.D. Pa. 2008) aff'd sub nom. In re DVI, Inc. Sec. Litig., 639 F.3d 623 (3d Cir. 2011)).

Alaska Electrical does not allege that the IIG members possessed information unavailable to the investing public. It does, however, assert that they purchased a disproportionately large percentage of their shares in Insulet after the initial corrective disclosures. Arkansas Teacher purchased approximately two-thirds of its shares in Insulet after January 7, 2015, and roughly half of its shares after January 14, 2015. Omaha Fire & Police purchased less than 5 percent of its shares after January 7, 2015. In total, just under 60 percent of the shares purchased by the IIG members were purchased after one or more partial disclosure was made.

While 60 percent is a significant portion of the shares purchased by the IIG, it is less than that found to be disproportionate in the case on which Alaska Electrical relies primarily. See Faris v. Longtop Financial Technologies Ltd., 2011 U.S. Dist. LEXIS 112970, at *27-28 (S.D.N.Y. Oct. 4, 2011) (group's purchase of 87 percent of shares after disclosures was atypical). Furthermore, Insulet's initial disclosures were not "so forceful"

15

that is was "unreasonable for [the IIG members] to continue to be misled by the defendants' alleged misrepresentation." In re DVI Inc., 249 F.R.D. at 204 n.13 (internal citations omitted). Rather, the complaint alleges significant, cumulative disclosures through April 30, 2015. The IIG members, and other absent class members, may reasonably have relied on the market to correct itself after Insulet's initial disclosures. See Feder, 429 F.3d at 138. Accordingly, the court finds that IIG's post-disclosure purchases do not undermine its adequacy and typicality as lead plaintiff.

C. Appointment of Lead Plaintiff

Smith, while apparently not opposing the IIG's appointment, requests appointment as co-lead plaintiff with the IIG. See Smith Opp. at 4-6. Many courts have recognized the benefits of having both private and institutional lead plaintiffs in securities class actions. See Johnson v. Pozen Inc., No. 1:07CV599, 2008 WL 474334, at *2 (M.D.N.C. Feb. 15, 2008) (collecting cases). However, the court must also consider the effect appointing, as a practical matter, four parties, represented by three firms, would have on the prospects for the efficient litigation of this case. See CareMatrix, 354 F. Supp. 2d at 24 (D. Mass. 2000) (declining to appoint four movants, represented by two firms, as lead plaintiffs).

The court finds that, in this case, appointment of Smith and the IIG as co-lead plaintiffs would undermine the purposes of the

16

PSLRA. The IIG members are already a varied group in terms of the size and timing of their investments. Adding a fourth party would have only marginal benefits, while potentially complicating the coordination of this litigation. Moreover, the IIG has not assented to Smith's request.[3] The court is not persuaded that the IIG and Smith would "be able to operate in concert and manage the litigation and the lawyers." CareMatrix, 354 F. Supp. 2d at 24. Nor has Smith shown that any marginal value he would add would justify the cost and risks of his participation. Accordingly, the court is appointing the IIG as the sole lead plaintiff in this case.

D. Lead Counsel

The PSLRA provides that the lead plaintiff shall select class counsel subject to the court's approval. See 15 U.S.C. §78u-4(a)(3)(B)(v). "While the Court should not be a rubber stamp, it should give the lead plaintiff['s] choice some weight." In re Lernout, 138 F. Supp. 2d at 46-47. Both Bernstein Litowitz and Scott + Scott have significant experience representing plaintiffs

---

[3] Smith did not certify that he attempted to resolve this issue with the IIG prior to filing his motion, as required by Rule 7.1(a)(2) of the Local Rules for the District of Massachusetts. The IIG has not responded to Smith's request that he be appointed as an additional lead plaintiff.

in securities class actions. Accordingly, the court is approving the IIG's selection of these firms as lead counsel.

V. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. The Institutional Investor Group's Motion for Appointment as Lead Plaintiff and Approval of its Selection of Lead Counsel (Docket No. 13) is ALLOWED.

2. Jefferey Smith's Motion for Appointment as Lead Counsel and Approval of Counsel (Docket No. 10) is DENIED.

3. The Alaska Electrical Pension Fund's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel (Docket No. 15) is DENIED.

4. The parties shall confer and, by April 22, 2016, file a proposed schedule for further proceedings in this case, jointly if possible but separately if necessary.

_____
UNITED STATES DISTRICT JUDGE