**EXECUTION COPY**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

ARKANSAS TEACHER RETIREMENT
SYSTEM, THE CITY OF BRISTOL
PENSION FUND, and THE CITY OF
OMAHA POLICE AND FIRE RETIREMENT
SYSTEM, on behalf of themselves and all
others similarly situated,

          Plaintiffs,

      v.

INSULET CORPORATION, DUANE
DESISTO, ALLISON DORVAL, BRIAN
ROBERTS, and CHARLES LIAMOS,

          Defendants.

Civil Action No. 15-12345-MLW

**STIPULATION OF SETTLEMENT**

---

This Stipulation of Settlement dated as of February 8, 2018 (the "Stipulation"), is made and entered into by and among the following Settling Parties to the above-entitled Litigation: (i) lead plaintiffs Arkansas Teacher Retirement System, the City of Bristol Pension Fund, and the City of Omaha Police & Fire Retirement System (collectively, "Lead Plaintiffs"), on behalf of themselves and each of the Settlement Class Members, by and through their counsel of record in the Litigation; and (ii) defendants Insulet Corporation ("Insulet"), Duane DeSisto, Allison Dorval, Brian Roberts and Charles Liamos (collectively, "Defendants"), by and through their counsel of record in the Litigation.  Subject to the approval of the Court, the Stipulation is intended by the Settling Parties to fully, finally, and forever resolve, discharge, and settle the Litigation and the Released Claims, upon and subject to the terms and conditions hereof.

## I.    THE LITIGATION

The Litigation is pending before the Honorable Mark L. Wolf in the United States District Court for the District of Massachusetts (the "Court").

On June 16, 2015, Arkansas Teacher Retirement System filed a securities class action complaint in the Court titled *Arkansas Teacher Retirement Sys. et al. v. Insulet Corp. et al.*, Case 1:15-cv-12345-MLW (D. Mass.).  On March 31, 2016, the Court appointed Arkansas Teacher Retirement System, the City of Bristol Pension Fund, and the City of Omaha Police & Fire Retirement System as Lead Plaintiffs, and appointed Bernstein Litowitz Berger & Grossmann LLP and Scott+Scott Attorneys at Law, LLP as Lead Counsel (Dkt. No. 36).

On June 1, 2016, Lead Plaintiffs filed a Consolidated Complaint for Violations of the Federal Securities Laws (Dkt. No. 44) (the "Complaint") naming Insulet, Duane DeSisto, Allison Dorval, Brian Roberts and Charles Liamos as defendants on behalf of purchasers of Insulet's publicly traded common stock from May 7, 2013 through April 30, 2015, inclusive (the "Settlement Class Period").  The Complaint is the operative complaint in this Litigation and alleges, inter alia, that Defendants engaged in a scheme to misrepresent and conceal manufacturing and quality issues that Insulet encountered during the launch of its next generation OmniPod Eros product in 2013 and the alleged impact that these manufacturing and quality issues had on demand for the OmniPod Eros, and further alleges that Defendants misled the market as to the basis on which the Company calculated its reported "new patient starts."  The Complaint asserts claims for damages under Sections 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder against all Defendants, and claims under Section 20(a) of the Securities Exchange Act of 1934 against defendants DeSisto, Roberts, Dorval and Liamos.

On August 1, 2016, Defendants filed their Motion to Dismiss the Complaint.  On March 17, 2017, following oral argument on Defendants Motion, the Court issued an Order (Dkt. No. 68) denying Defendants' motion to dismiss the Complaint.

On March 31, 2017, the Court entered a Scheduling Order that was jointly proposed by the Settling Parties, establishing a schedule for (among other things) fact discovery, class certification, expert discovery, and motions for summary judgment.  On May 30, 2017, pursuant to a stipulation of the Settling Parties, the Court entered an Order Concerning the Production and Exchange of

Confidential Information (Dkt. No. 78).  On May 30, 2017, Defendants filed their Answer to the Complaint (Dkt. No. 79).

The Settling Parties commenced discovery on April 21, 2017, when Lead Plaintiffs served their First Set of Production of Documents Directed to All Defendants.  On May 1, 2017, the Parties exchanged their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).  On May 31, 2017, Defendants served their First Set of Interrogatories to Lead Plaintiffs.  On June 14, 2017, Lead Plaintiffs served a Notice of Deposition on Insulet pursuant to Fed. R. Civ. P. 30(b)(6), as well as their First Set of Interrogatories Directed to Defendants Insulet and Dorval.

On July 20, 2017, the Settling Parties participated in an all-day mediation session before David Geronemus, Esq. of JAMS (the "Mediator") at Defendants' Counsel's office in New York. Prior to the mediation, the Settling Parties exchanged mediation statements.  The Settling Parties did not reach an agreement to settle this matter during the July 20, 2017 mediation.  However, as noted below, the Settling Parties continued to engage in settlement discussions with the assistance of the Mediator over the next four and a half months (and also exchanged several rounds of additional supplemental mediation briefing and other materials during this period in connection with those discussions).

Following the July 20, 2017 mediation, the Settling Parties continued with discovery.  On August 11, 2017, Defendants served their First Set of Request for the Production of Documents to Lead Plaintiffs and First Set of Interrogatories to Lead Plaintiffs Concerning Class Certification. On August 23, 2017, Lead Plaintiffs served a Second Set of Requests for Production of Documents Directed to Defendants.  On September 2, 2017, Defendants served their Second Set of Request for Production of Documents to Lead Plaintiffs.  On November 15, 2017, Lead Plaintiffs served both their Second Set of Interrogatories and their Third Set of Requests for Production of Documents to Defendants.  The Settling Parties also engaged in extensive third party discovery: Lead Plaintiffs served 32 document subpoenas on Insulet's distributors, business partners, and associates, as well as a former employee, and Defendants served subpoenas for documents and testimony on Lead Plaintiffs' investment advisers and expert.  In total, Defendants produced

approximately 130,000 pages of documents to Lead Plaintiffs and Lead Plaintiffs produced over 16,000 pages to Defendants.

On August 25, 2017, Lead Plaintiffs filed their Motion for Class Certification (Dkt. No. 84), together with supporting declarations from each of the three Lead Plaintiffs and their expert on market efficiency. Thereafter, representatives of each of the three Lead Plaintiffs traveled to Boston to be deposed by Defendants' counsel. In addition, counsel for Defendants deposed (and Lead Plaintiffs' counsel defended or attended) Lead Plaintiffs' expert on market efficiency and certain of Lead Plaintiffs' outside investment advisors. On November 17, 2017, Defendants filed their Memorandum of Law in Opposition to Lead Plaintiffs' Motion for Class Certification with a supporting report from Defendants' expert (Dkt. No. 99).

In late November 2017, or roughly four months after the parties' initial face-to-face mediation session with the Mediator, the Settling Parties reached an agreement in principle to settle, and after further negotiations, the Settling Parties executed a binding and enforceable Memorandum of Understanding (the "MOU") to settle the Litigation on December 14, 2017. This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Settling Parties and supersedes the MOU.

## II.  DEFENDANTS' DENIALS OF WRONGDOING AND LIABILITY

Defendants have expressly denied and continue to deny that they have committed any act or omission giving rise to any liability or violation of law whatsoever, that the claims advanced in the Litigation are meritorious, or that they have any liability whatsoever to Lead Plaintiffs or to any other member of the Settlement Class, and by entering into this Stipulation Defendants do not concede the merit of any claims or the lack of merit of any defense to liability. This Stipulation and the provisions herein shall not be deemed to be, or offered or received in evidence as, a presumption, a concession or an admission of any fault, liability, or wrongdoing or damage whatsoever by any Defendant and, except as required to enforce this Settlement, they shall not be used by any person in these or any other actions or proceedings, whether civil, criminal or administrative.

Nonetheless, Defendants have concluded that further conduct of the Litigation would be protracted and expensive, and that it is desirable that the Litigation be fully and finally settled in the manner and upon the terms and conditions set forth in this Stipulation. Defendants also have taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like the Litigation. Defendants have, therefore, determined that it is desirable and beneficial that the Litigation be settled in the manner and upon the terms and conditions set forth in this Stipulation.

## III.   CLAIMS OF LEAD PLAINTIFFS AND BENEFITS OF SETTLEMENT

Lead Plaintiffs believe that the claims asserted in the Litigation have merit and that the evidence developed to date supports the claims asserted. However, Lead Plaintiffs recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Litigation against Defendants through trial and through appeals. Lead Plaintiffs have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, and the difficulties and delays inherent in such Litigation. Lead Plaintiffs are also mindful of the inherent problems of proof under and possible defenses to the claims of securities law violations asserted in the Litigation. Lead Plaintiffs believe that the settlement set forth in the Stipulation confers substantial benefits upon the Settlement Class. Based on their evaluation, Lead Plaintiffs and their counsel have determined that the settlement set forth in the Stipulation is in the best interests of the Settlement Class, is fair and reasonable in all respects, and that the Litigation should therefore be settled upon the terms and conditions set forth in this Stipulation.

## IV.   TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Lead Plaintiffs (on behalf of themselves and each of the Settlement Class Members) and Defendants, by and through their respective duly authorized counsel of record, that, subject to the approval of the Court, the Released Claims shall be finally and fully compromised, settled and released, and the Litigation shall be dismissed with prejudice, upon and subject to the terms and conditions of this Stipulation, as follows.

## 1.      Definitions

As used in the Stipulation, the following terms have the meanings specified below.  In the event of any inconsistency between any definition set forth below and any definition set forth in any document attached as an exhibit to this Stipulation, the definition set forth below shall control.

1.1.      "Authorized Claimant" means any Claimant who submits a Claim that is approved by the Court for payment from the Net Settlement Fund.

1.2.      "Claim" means a Proof of Claim and Release submitted to the Claims Administrator.

1.3.      "Claimant" means a person or entity who or which submits a Claim seeking to be eligible to share in the proceeds of the Net Settlement Fund.

1.4.      "Claims Administrator" means the firm retained by Lead Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

1.5.      "Complaint" means the Consolidated Complaint for Violations of the Federal Securities Laws filed by Lead Plaintiffs on June 1, 2016 (Dkt. No. 44).

1.6.      "Court" means the United States District Court for the District of Massachusetts.

1.7.      "Defendants" means Insulet, Duane DeSisto, Allison Dorval, Brian Roberts and Charles Liamos.

1.8.      "Defendants' Counsel" means Goodwin Procter LLP.

1.9.      "Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

1.10.      "Effective Date" means the first date by which all of the events and conditions specified in ¶6.1 of this Stipulation have occurred.

1.11.      "Escrow Account" means the account created pursuant to ¶2.1 wherein the Settlement Amount shall be deposited and held in escrow under the control of Lead Counsel.

1.12.      "Escrow Agent" means Huntington National Bank.

1.13.    "Fee and Expense Award" means any award by the Court to Plaintiffs' Counsel's for their requested attorneys' fees and expenses with interest thereon.

1.14.    "Final" means, with respect to any order of court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise.  Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing any further appeal has expired.  For purposes of this Paragraph, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings seeking review, alteration, amendment or appeal of a court's order.  Any appeal or other proceeding pertaining to the Plan of Allocation, the Fee and Expense Award (or any other application for attorneys' fees or expenses) or the Lead Plaintiffs' Cost and Expense Award shall not in any way delay or preclude the Judgment from becoming Final.

1.15.    "Immediate Family Members" means any spouse, domestic partner, parent, step-parent, grandparent, child, step-child, grandchild, sibling, mother-in-law, father-in-law, son-in-law, daughter-in-law, brother-in-law, or sister-in-law, and any other person (other than a tenant or employee) sharing the household of any person(s) referenced herein.

1.16.    "Individual Defendants" means Duane DeSisto, Allison Dorval, Brian Roberts and Charles Liamos.

1.17.    "Insulet" means Insulet Corporation.

1.18.    "Judgment" means the judgment to be rendered by the Court approving the Settlement, substantially in the form attached as Exhibit B hereto.

1.19.    "Lead Counsel" means Bernstein Litowitz Berger & Grossmann LLP and Scott+Scott Attorneys at Law, LLP.

1.20.     "Lead Plaintiffs" means Arkansas Teacher Retirement System, the City of Bristol Pension Fund, and the City of Omaha Police & Fire Retirement System.

1.21.     "Lead Plaintiffs' Cost and Expense Award" means any award by the Court to Lead Plaintiffs for their requested reasonable costs and expenses (including lost wages) pursuant to 15 U.S.C. §78u-4(a)(4).

1.22.     "Litigation" means *Arkansas Teacher Retirement Sys. et al. v. Insulet Corp., et al.*, Case No. 1:15-cv-12345-MLW, pending before the Honorable Mark L. Wolf in the United States District Court for the District of Massachusetts.

1.23.     "Net Settlement Fund" shall have the meaning described in ¶4.3(e) below.

1.24.     "Notice" means the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit A-1, which is to be mailed to Settlement Class Members.

1.25.     "Notice and Administration Expenses" means all expenses incurred in connection with the administration of the Settlement, and shall include, among other things, the cost of publishing the Summary Notice, locating Settlement Class Members, printing and mailing the Notice and Claim Form as directed by the Court, and the cost of processing Claims and distributing settlement funds to Authorized Claimants, as well as any costs, fees and expenses incurred in connection with the Escrow Account.

1.26.     "Notice Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class.

1.27.     "Person(s)" means an individual, corporation, limited liability company, professional corporation, partnership, limited partnership, limited liability partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity together with the spouses, heirs, predecessors, successors, representatives, or assignees of any of the foregoing.

1.28.    "Plaintiffs' Counsel" means and includes Lead Counsel and the additional firms of Glancy Prongay & Murray LLP and Berman Tobacco.

1.29.    "Plan of Allocation" means a plan or formula of allocation of the Settlement Fund, to be approved by the Court, whereby the Settlement Fund shall be distributed to Authorized Claimants after payment of or provision for Notice and Administration Expenses, Taxes, and such attorneys' fees, costs, expenses, and interest and any award to Lead Plaintiffs as may be awarded by the Court.  Any Plan of Allocation is not part of this Stipulation, and neither Defendants nor any of the other Released Defendant Persons shall have any role, responsibility or liability with respect thereto.

1.30.    "Proof of Claim and Release" or "Claim Form" means the form to be sent to Settlement Class Members, substantially in the form attached as Exhibit A-2 hereto, that a Claimant must complete and submit in order to seek to share in a distribution of the Net Settlement Fund.

1.31.    "Released Claims" means any and all Released Plaintiffs' Claims and Released Defendants' Claims.

1.32.    "Released Defendants' Claims" means any and all claims, known or unknown, contingent or non-contingent, whether suspected or unsuspected, including any claims arising under federal or state statutory or common law or any other law, rule or regulation, whether foreign or domestic, including Unknown Claims, arising out of, relating to, or in connection with, the institution, prosecution, or settlement of the Litigation or the Released Plaintiffs' Claims. Notwithstanding any other language herein to the contrary, Released Defendants' Claims shall not include any claims to enforce the terms of the Settlement or the Judgment entered pursuant thereto.

1.33.    "Released Defendant Person(s)" means each and all of the Defendants, any past defendants in the Litigation, and any of their respective past or present parent entities, affiliates, divisions, subsidiaries or Immediate Family Members, and each and all of the foregoing's respective past, present or future officers, directors, stockholders, agents, representatives, employees, attorneys, advisors, consultants, accountants, investment bankers,

underwriters, brokers, dealers, lenders, insurers, co-insurers, reinsurers, heirs, executors, principals, managing directors, managing agents, joint ventures, personal or legal representatives, estates, beneficiaries, predecessors, successors and assigns, in their capacities as such.

 1.34. "Released Person(s)" means each and all of the Released Defendant Persons and Released Plaintiff Persons.

 1.35. "Released Plaintiffs' Claims" means any and all claims, known or unknown, contingent or non-contingent, whether suspected or unsuspected, including any claims arising under federal or state statutory or common law or any other law, rule or regulation, whether foreign or domestic, including Unknown Claims, that Lead Plaintiffs or any other member of the Settlement Class (a) asserted in the Complaint or any other complaints previously filed in the Litigation, or (b) could have asserted in any forum that arise out of or relate to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint or any other complaints previously filed in the Litigation, and that relate to the purchase of Insulet common stock during the Settlement Class Period. Notwithstanding any other language herein to the contrary, Released Plaintiffs' Claims shall not include any claims to enforce the terms of the Settlement or the Judgment entered pursuant thereto, or any claims currently asserted in any shareholder derivative complaint, including *Walker v. DeSisto, et al.*, Civ. A. No. 17-19738-MLW (D. Mass.) and *Carnazza v. DeSisto, et al.*, Civ. A. No. 17-11977-MLW (D. Mass.).

 1.36. "Released Plaintiff Person(s)" means each and all of the Lead Plaintiffs, Plaintiffs' Counsel, all Settlement Class Members, and any of their respective past or present parent entities, affiliates, divisions, subsidiaries or Immediate Family Members, and each and all of the foregoing's respective past, present or future officers, directors, stockholders, agents, representatives, employees, attorneys, advisors, consultants, accountants, investment bankers, underwriters, brokers, dealers, lenders, insurers, co-insurers, reinsurers, heirs, executors, principals, managing directors, managing agents, joint ventures, personal or legal representatives, estates, beneficiaries, predecessors, successors and assigns, in their capacities as such.

1.37.    "Settlement" means the settlement of the Litigation as embodied in this Stipulation.

1.38.    "Settlement Amount" means Nineteen Million Five Hundred Thousand Dollars ($19,500,000.00).

1.39.    "Settlement Class" means all Persons who purchased Insulet common stock during the Settlement Class Period and were damaged thereby.  Excluded from the Settlement Class are: (i) Defendants and any parent, subsidiary or affiliate of Insulet; (ii) the officers and directors of Insulet and its affiliates, currently and during the Settlement Class Period; (iii) Immediate Family Members of any Individual Defendant; (iv) any entity in which any Defendant has or had during the Settlement Class Period a controlling interest; and (v) the legal representatives, heirs, successors or assigns of any such excluded person or entity.  Also excluded from the Settlement Class is each Person who submits a request for exclusion from the Settlement Class that is accepted by the Court.

1.40.    "Settlement Class Member" means a Person who falls within the definition of the Settlement Class as set forth in ¶1.39.

1.41.    "Settlement Class Period" means the period commencing on May 7, 2013 through April 30, 2015, inclusive.

1.42.     "Settlement Fund" means the Settlement Amount plus any interest earned thereon.

1.43.    "Settling Parties" or "Parties" means, collectively, Defendants and Lead Plaintiffs on behalf of themselves and the Settlement Class Members.

1.44.    "Summary Notice" means the Summary Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses, substantially in the form attached hereto as Exhibit A-3, to be published as set forth in the Notice Order.

1.45.    "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund, including, without

limitation, any taxes or tax detriments that may be imposed upon the Released Defendant Persons or Defendants' Counsel with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes; (ii) the expenses and costs incurred by Lead Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

1.46.    "Unknown Claims" means any Released Plaintiffs' Claims which any Lead Plaintiff or any Settlement Class Member does not know or suspect to exist in his, her or its favor at the time of the release of such claims, and any Released Defendants' Claims which any Defendant does not know or suspect to exist in his, her, or its favor at the time of the release of such claims, which, if known by him, her or it, might have affected his, her or its settlement with and release of the Released Persons, or might have affected his, her or its decision not to object to this Settlement.  With respect to any and all Released Claims, the Settling Parties stipulate and agree that, upon the Effective Date, Lead Plaintiffs and Defendants shall expressly waive, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived the provisions, rights, and benefits of California Civil Code § 1542, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor.**

Lead Plaintiffs and Defendants shall expressly waive, and each of the Settlement Class Members shall be deemed to have, and by operation of the Judgment shall have, expressly waived any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States, or principle of common law or foreign law, which is similar, comparable or equivalent in effect to California Civil Code § 1542.  Lead Plaintiffs, Defendants, and Settlement Class Members may hereafter discover facts in addition to or different from those which he, she or it now knows

or believes to be true with respect to the subject matter of the Released Claims, but Lead Plaintiffs and Defendants shall expressly and each Settlement Class Member, upon the Effective Date, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, without regard to the subsequent discovery or existence of such different or additional facts.   Lead Plaintiffs and Defendants acknowledge, and the Settlement Class Members shall be deemed by operation of the Judgment to have acknowledged, that the foregoing waiver was separately bargained for and a key element of the Settlement.

### 2.    The Settlement

#### A.    The Settlement Fund

2.1.    Defendant Insulet, on behalf of all Defendants, shall transmit or cause to be transmitted, by check or wire transfer, Nineteen Million Five Hundred Thousand Dollars ($19,500,000.00) (the "Settlement Amount") in cash into an escrow account to be maintained and controlled by Lead Counsel (the "Escrow Account") within twenty (20) business days of the later of (i) the date of entry of the Court order granting preliminary approval of the Settlement; or (ii) the provision of payment instructions by Lead Counsel to Defendants' Counsel.

2.2.    Except as otherwise provided herein, the funding of the Settlement Amount shall be the full and sole monetary contribution made by or on behalf of the Defendants and the Released Defendant Persons in connection with the Settlement, and Defendants shall have no responsibility for payment of Plaintiffs' Counsel's attorneys' fees and expenses or any other amounts in connection with the Settlement memorialized herein beyond payment of the Settlement Amount.  All costs of notice and administration of the Settlement, other than any costs associated with Defendants' obligation under 28 U.S.C. § 1715(b) to provide notice under the Class Action Fairness Act of 2005 ("CAFA") and any costs incurred by Defendants in connection with providing Insulet's stock transfer records, shall be paid out of the Escrow Account. Notwithstanding the fact that the Effective Date has not yet occurred, Lead Counsel may pay from the Escrow Account the actual costs of Notice and Administration Expenses up to Three Hundred Thousand Dollars ($300,000.00) without further order of the Court.   Other than the costs of

Defendants' providing Insulet's stock transfer records and disseminating CAFA notice, which costs shall be paid by Defendants, Defendants shall have no responsibility for Notice and Administration Expenses of the Settlement in excess of the Settlement Amount.  Except as otherwise provided in this Stipulation with respect to payment of the Fee and Expense Award and the Lead Plaintiffs' Cost and Expense Award out of the Settlement Fund, the Parties shall bear their own costs and expenses (including attorneys' fees) in connection with effectuating the Settlement and securing all necessary Court orders and approvals with respect to the same.  In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Expenses paid or incurred, including any related fees, shall not be returned or repaid to Defendants, any of the other Released Defendant Persons, or any other person or entity who or which paid any portion of the Settlement Amount.

2.3.     The Settlement is not a claims-made settlement.  Upon the occurrence of the Effective Date, no Defendant, Released Defendant Person, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants (as that term is defined in the Notice), the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

**B.     The Escrow Agent**

2.4.     Immediately upon the funding of the Settlement Amount by Defendants into the Escrow Account as set forth in ¶2.1 hereof, the Escrow Agent shall invest any funds in the Escrow Account exclusively in United States Treasury Bills (or a mutual fund invested solely in such instruments) and shall collect and reinvest all interest accrued thereon, except that any residual cash balances up to the amount that is insured by the FDIC may be deposited in any account that is fully insured by the FDIC.  In the event that the yield on United States Treasury Bills is negative, in lieu of purchasing such Treasury Bills, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by

the full faith and credit of the United States.  Additionally, if short-term placement of the funds is necessary, all or any portion of the funds held by the Escrow Agent may be deposited in any account that is fully insured by the FDIC or backed by the full faith and credit of the United States. The Released Defendant Persons shall not have any responsibility or liability whatsoever for investment decisions.  All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund and not by any of the Defendants or Released Defendant Persons, and the Settlement Fund shall indemnify the Released Defendant Persons and hold them harmless from any losses arising from the investment or disbursement of any portion of the Settlement Fund.

2.5.      Lead Counsel may authorize the Escrow Agent to pay reasonable and necessary Notice and Administration Expenses and Taxes without further order of the Court upon funding of the Settlement Amount by Defendants as set forth in ¶2.1 hereof.  Other than amounts disbursed for Notice and Administration Expenses, Taxes, the Fee and Expense Award, and Lead Plaintiffs' Cost and Expense Award, the Settlement Fund shall not be distributed until the Effective Date of the Settlement, as set forth in ¶6.1.

2.6.      The Escrow Agent is authorized to execute only such transactions as are consistent with the terms of this Stipulation or by order of the Court, or with the written agreement of counsel for all Parties hereto.

2.7.      All funds held by the Escrow Agent shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as such funds shall be distributed pursuant to this Stipulation and/or upon further order(s) of the Court.

**C.      Taxes**

2.8.      The Settling Parties and the Escrow Agent shall treat the escrow account as a "qualified settlement fund" for purposes of Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.  Lead Counsel shall instruct the Escrow Agent to timely make such elections as are necessary or advisable to carry out the provision of this ¶2.8, including, without limitation, the "relation-back election" described in

Treas. Reg. §1.468B-1 back to the earliest permitted date.  Such elections shall be made in compliance with the procedures and requirements contained in such regulations.

2.9.      Lead Counsel shall be the Escrow Account's "administrator" as that term is used in Treas. Reg. §1.468B-2.  As administrator, the Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. §1.468B-2 by, *e.g.*, (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or withholding requirements imposed on distributions from the Settlement Fund, and (iii) timely and properly filing applicable federal, state or local tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. §1.468B-2(k)) and paying any taxes reported thereon.  Such returns (as well as the election described in ¶2.8) shall be consistent with this ¶2.9 and in all events shall reflect that all Taxes, as defined in ¶1.45, on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided in ¶2.10 hereof.

2.10.      All Taxes shall be paid by the Escrow Agent out of the Settlement Fund; in all events neither the Released Defendant Persons nor Defendants' Counsel shall have any liability or responsibility for the Taxes, or the filing of any tax returns or other documents with the Internal Revenue Service or any other state or local taxing authority.  With funds from the Settlement Fund, the Escrow Agent shall indemnify and hold harmless the Released Defendant Persons and Defendants' Counsel for any payment of Taxes.

### D. Certification, Notice Order and Settlement Hearing

2.11.      The Parties hereby stipulate to certification of the Settlement Class, pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure, solely for purposes of this Stipulation and the Settlement set forth herein.  If the Stipulation is not approved by the Court, however, then (a) Defendants shall retain all rights to (i) object to and oppose class certification, or (ii) challenge the standing of Lead Plaintiffs or any other intervening plaintiff; and (b) this Stipulation and any motion or other papers filed in support of its approval shall not be offered as evidence of any agreement, admission or concession that any class should be or remain certified

in the Litigation or that any Lead Plaintiff or other Settlement Class Member has standing or any legal right to represent any class.

2.12.    Within ten (10) business days of execution of this Stipulation, Lead Counsel shall submit the Stipulation to the Court and shall apply for entry of an order (the "Notice Order") substantially in the form attached hereto as Exhibit A, requesting, *inter alia*, the preliminary approval of the Settlement set forth in this Stipulation, certification of the Settlement Class for settlement purposes only, and approval of notice to the Settlement Class.  Defendants shall consent to or not oppose (as Lead Counsel may elect), Lead Counsel's appropriate application for entry of the Notice Order.  Defendants do not and shall not take any position on the proposed Plan of Allocation.

2.13.    Lead Counsel shall request that the Notice Order set forth a date on which the Court will hold a hearing (the "Settlement Hearing") during which Lead Counsel will request that the Court finally approve the Settlement of the Litigation as set forth herein.

2.14.    At the Settlement Hearing, the Settling Parties shall jointly request entry of a Judgment, substantially in the form attached hereto as Exhibit B, which will, among other things:

(a)    finally approve the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and direct its consummation pursuant to its terms;

(b)    certify a Settlement Class, as defined in ¶1.39 herein, for settlement purposes only;

(c)    direct that the Litigation be dismissed with prejudice; direct that the Settling Parties are to bear their own costs, except as otherwise provided in this Stipulation, and release the Released Claims;

(d)    permanently bar and enjoin the institution and prosecution, by Lead Plaintiffs and the Settlement Class Members, of any other action against the Released Defendant Persons in any court asserting any Released Plaintiffs' Claims or by Defendants of any action against the Released Plaintiff Persons asserting any Released Defendants' Claims; provided,

however, that the Judgment shall not bar any action or claim to enforce the terms of the Settlement or the Judgment;

   (e) reserve jurisdiction over the Litigation, including all future proceedings concerning the administration, consummation, and enforcement of this Stipulation;

   (f) find that the Complaint in the Litigation was filed on a good faith basis and that the Settling Parties and their respective counsel have complied in all respects with the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Litigation;

   (g) find, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, that there is no just reason for delay, and directing entry of a final judgment; and

   (h) contain such other and further provisions consistent with the terms of this Stipulation to which the Settling Parties expressly consent in writing.

   2.15. At or after the Settlement Hearing, Lead Counsel also will request that the Court approve the proposed Plan of Allocation, Plaintiffs' Counsel's Fee and Expense Award, and Lead Plaintiffs' Cost and Expense Award.

   **3.** **Releases**

   3.1. Upon the Effective Date, Lead Plaintiffs and each of the Settlement Class Members, on behalf of themselves and each of their respective officers, directors, shareholders, employees, agents, personal representatives, spouses, subsidiaries, trustees, heirs, executors, administrators, successors and assigns, and any other Person claiming (now or in the future) to be acting on behalf of any of them, in their capacities as such, and regardless of whether any such Lead Plaintiff or Settlement Class Member ever seeks or obtains by any means, including, without limitation, by submitting a Claim Form, any distribution from the Settlement Fund, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Plaintiffs' Claims against the Released Defendant Persons and shall have covenanted not to sue the Released Defendant Persons with respect to all such Released Plaintiffs' Claims, and shall be permanently barred and enjoined from instituting,

commencing, participating in, continuing, maintaining, asserting or prosecuting, whether directly or indirectly, whether in the United States or elsewhere, whether on their own behalf or on behalf of any class or any other Person, any Released Plaintiffs' Claim against the Released Defendant Persons; provided, however, that nothing herein shall bar any action or claim to enforce the terms of the Settlement or the Judgment entered pursuant thereto.

3.2.     Upon the Effective Date, each of the Defendants, and each of their respective officers, directors, shareholders, employees, agents, personal representatives, spouses, subsidiaries, trustees, heirs, executors, administrators, successors and assigns, and any other Person claiming (now or in the future) to be acting on behalf of any of them, in their capacities as such, shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Defendants' Claims against the Released Plaintiff Persons and shall have covenanted not to sue the Released Plaintiff Persons with respect to all such Released Defendants' Claims, and shall be permanently barred and enjoined from instituting, commencing, participating in, continuing, maintaining, asserting or prosecuting, whether directly or indirectly, whether in the United States or elsewhere, any Released Defendants' Claim against the Released Plaintiff Persons; provided, however, that nothing herein shall bar any action or claim to enforce the terms of the Settlement or the Judgment entered pursuant thereto.

**4.     Administration and Calculation of Claims, Final Awards, and Supervision and Distribution of the Settlement Fund**

4.1.     The Claims Administrator, subject to such supervision and direction of the Court or Lead Counsel as may be necessary or as circumstances may require, shall administer and calculate the claims submitted by Settlement Class Members and shall oversee distribution of the Net Settlement Fund (defined below) to Authorized Claimants pursuant to the Plan of Allocation. The Released Defendant Persons shall not have any role in, or responsibility or liability to any Person, including without limitation the Settlement Class Members, for the administration of the

Settlement or the solicitation, review or evaluation of Claim Forms, nor shall any discovery be taken of Defendants in connection with such matters.

4.2.    For the purposes of identifying and providing notice to the Settlement Class, within ten (10) business days of the date of entry of the Notice Order, Insulet shall provide or cause to be provided to the Claims Administrator in electronic format (at no cost to the Settlement Fund, Lead Counsel or the Claims Administrator) its shareholder lists (consisting of names and addresses) of the holders of the Insulet common stock during the Settlement Class Period.

4.3.    The Settlement Fund shall be applied as follows:

(a)    to pay the Fee and Expense Award in accordance with ¶¶5.1 and 5.2 below, if and to the extent allowed by the Court, immediately upon the entry of the Court's order awarding such fees and expenses, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Lead Counsel's obligation to repay those amounts to the Settlement Fund if the fee or cost award is reduced or reversed on appeal;

(b)    to pay any award of reimbursement to the Lead Plaintiffs in accordance with ¶¶5.1 and 5.2 below, if and to the extent allowed by the Court, immediately upon the entry of the Court's order awarding such reimbursement;

(c)    to pay all Notice and Administration Expenses;

(d)    to pay the Taxes described in ¶1.45 hereof; and

(e)    to distribute the balance of the Settlement Fund (the "Net Settlement Fund") to Authorized Claimants as allowed by the Stipulation, the Plan of Allocation, and order of the Court.

4.4.    Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.   No Defendant, or any other Released Defendant Person, shall be permitted to review, contest or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member.   Lead Counsel shall

have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

      4.5.      Upon the Effective Date and thereafter, and in accordance with the terms of the Stipulation, the Plan of Allocation, or such further approval and further order(s) of the Court as may be necessary or as circumstances may require, the Net Settlement Fund shall be distributed by the Claims Administrator to Authorized Claimants, subject to and in accordance with the following:

      (a)      Within one hundred and twenty (120) calendar days after the Notice Date or such other time as may be set by the Court, each Person claiming to be an Authorized Claimant shall be required to submit to the Claims Administrator a completed Proof of Claim and Release, substantially in the form of Exhibit A-2 attached hereto, signed under penalty of perjury, and supported by such documents as are specified in the Proof of Claim and Release.

      (b)      The validity of each claim submitted will be initially determined by the Claims Administrator, acting under Lead Counsel's supervision as necessary, in accordance with the Plan of Allocation approved by the Court.  In the event a Claimant disagrees with such determination, the Claimant may elect to submit the dispute to the Court for summary resolution. Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to that Claimant's claim against the Net Settlement Fund.

      (c)      Except as otherwise ordered by the Court, any and all Settlement Class Members who fail to timely submit a properly completed and signed Proof of Claim and Release within such period as is ordered by the Court shall be forever barred from receiving any payments pursuant to the Stipulation and the Settlement set forth therein, but will in all other respects be subject to and bound by the provisions of the Stipulation, the releases contained therein, the Judgment and all proceedings, rulings, orders, and judgments in the Litigation, including, without limitation, the release of the Released Claims and the dismissal with prejudice of the Litigation. Notwithstanding the foregoing, Lead Counsel shall have the discretion to accept late-submitted

claims for processing by the Claims Administrator so long as distribution of the Net Settlement Fund is not materially delayed thereby.

(d)     Lead Counsel, with approval of Lead Plaintiffs, shall apply to the Court, on notice to Defendants' Counsel, for an order approving the Claims Administrator's determinations concerning the acceptance or rejection of the submitted Proofs of Claim and Release forms and approving any Notice and Administration Expenses or Taxes not previously applied for and, if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants substantially in accordance with the plan of allocation approved by the Court (the "Distribution Order").  Any such plan of allocation is not a part of this Stipulation.  No funds from the Net Settlement Fund shall be distributed to Authorized Claimants until the Effective Date.  If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks, or otherwise), nine months after the initial distribution of the Net Settlement Fund, then Lead Counsel shall, if feasible, direct the Claims Administrator to reallocate such balance among Authorized Claimants in an equitable and economic fashion, consistent with the Plan of Allocation.  Additional re-distributions to Authorized Claimants may occur thereafter if Lead Counsel, in consultation with the Claims Administrator, determine that additional re-distributions, after the deduction of any additional fees and expenses incurred in administering the Settlement, including for such re-distributions, would be cost-effective. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, any balance which still remains in the Net Settlement Fund shall be donated to one or more secular §501(c)(3) organization(s) selected by Lead Counsel and approved by the Court.

4.6.     None of the Defendants or Released Persons, nor their counsel, shall have any role in, responsibility for, interest in, or liability whatsoever with respect to the investment or distribution of the Settlement Fund or Net Settlement Fund, the Plan of Allocation, the determination, administration, or calculation of claims, the payment or withholding of Taxes, or any losses incurred in connection with any such matters.  Lead Plaintiffs and each Settlement Class

Member hereby fully, finally, and forever release, relinquish, and discharge the Released Persons and their counsel from any and all such liability.

4.7.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim.  No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

4.8.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members.  All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment, if applicable, to be entered in this Litigation and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Released Defendant Persons with respect to any and all of the Released Plaintiffs' Claims.

4.9.     All proceedings with respect to the administration, processing, and determination of Claims, and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court.  All Settlement Class Members, other Claimants, and Settling Parties expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

4.10.    No Person shall have any claim against Lead Plaintiffs, Lead Counsel, the Claims Administrator, or their counsel, officers or employees based on the distributions made substantially in accordance with the Stipulation and the Settlement contained herein, the Plan of Allocation, or further order(s) of the Court.  No Person shall have any claim against the Released Defendant Persons or their counsel arising from or relating to the management of, distributions

from, or the disposition of the Settlement Fund or the Net Settlement Fund, and Lead Plaintiffs and each Settlement Class Member hereby fully, finally, and forever release, relinquish, and discharge the Released Defendant Persons and their counsel from any and all such liability.

4.11.    It is understood and agreed by the Settling Parties that any proposed Plan of Allocation of the Net Settlement Fund is not a part of the Stipulation and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation, and any order, proceeding or dispute relating to the Plan of Allocation including, but not limited to, those related to adjustments to an Authorized Claimant's claim, shall not operate to terminate or cancel the Stipulation or affect or delay the finality of the Court's Judgment approving the Stipulation and the Settlement set forth therein, or any other orders entered pursuant to the Stipulation.  The time to appeal from approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether a Plan of Allocation has been submitted to the Court or has been approved.

4.12.    All Persons who fall within the definition of Settlement Class Members shall be subject to and bound by the provisions of this Stipulation, the releases contained herein, and the Judgment with respect to all Released Plaintiffs' Claims, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Settlement Fund or the Net Settlement Fund.

### 5.    Plaintiffs' Counsel's Attorneys' Fees and Expenses

5.1.    Lead Counsel will submit an application on behalf of all Plaintiffs' Counsel (the "Plaintiffs' Counsel's Fee and Expense Application") for distributions to Plaintiffs' Counsel from the Settlement Fund for: (a) an award of attorneys' fees not to exceed 25% of the Settlement Fund; plus (b) the reimbursement of reasonable expenses incurred in connection with prosecuting the Litigation (including, but not limited to the fees and expenses of experts and consultants), plus any interest on such attorneys' fees and expenses at the same rate as earned by the Settlement Fund from the date the Court orders such award until the date paid as may be awarded by the Court.  In

addition, Lead Plaintiffs may submit an application for an award of their reasonable costs and expenses (including lost wages) pursuant to 15 U.S.C. §78u-4(a)(4) ("Lead Plaintiffs Cost and Expense Award").

      5.2.     Any Fee and Expense Award (including the fees and expenses of experts and consultants, and interest earned thereon) and any Lead Plaintiffs' Cost and Expense Award, shall be payable from the Settlement Fund immediately upon the entry of the Court's order granting such awards, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to appropriate undertakings by Lead Counsel to repay those amounts to the Settlement Fund if such awards are reduced or reversed in whole or in part on appeal or further review.  Lead Counsel shall have the authority to allocate the Fee and Expense Award among all Plaintiffs' Counsel in a manner in which they in good faith believe reflects the contributions of such counsel to the initiation, prosecution, and resolution of the Litigation.  If, and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack or otherwise, the Fee and Expense Award or Lead Plaintiffs' Cost and Expense Award is overturned or reduced, or if the Settlement is terminated, not approved by the Court, or otherwise does not become Final and binding upon the Settlement Class for any reason, then, within twenty (20) business days from receiving notice from Defendants' Counsel or from a court of appropriate jurisdiction of such event, Lead Counsel shall refund to the Settlement Fund, in an amount consistent with such reversal or modification, the Fee and Expense Award, as well as the Lead Plaintiffs' Cost and Expense Award, and in addition shall pay into the Settlement Fund interest on the total amount refunded at the same rate as earned on the Settlement Fund from the time of payment of the Fee and Expense Award and/or the Lead Plaintiffs' Cost and Expense Award, whichever is applicable, until the date of refund, in an amount consistent with such reversal or modification.  Each Plaintiffs' Counsel firm receiving fees and expenses, as a condition of receiving such fees and expenses, on behalf of itself and each partner and/or shareholder of it, agrees that such law firm

and its partners and/or shareholders are subject to the jurisdiction of the Court for the purpose of enforcing the provisions of this paragraph.

5.3.    The procedure for and the allowance or disallowance by the Court of any Fee and Expense Application or of any Lead Plaintiffs' Cost and Expense Application to be paid out of the Settlement Fund are not part of the Settlement set forth in the Stipulation, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement set forth in the Stipulation; and any order, proceeding or dispute relating to any Fee and Expense Application or Lead Plaintiffs' Cost and Expense Application, or any appeal from any order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel the Stipulation or the Settlement or affect or delay the finality of the Judgment approving the Settlement.  None of the Parties may terminate or cancel the Settlement on the basis of the amount of any Fee and Expense Award or Lead Plaintiffs' Cost and Expense Award.

5.4.    The Defendants, the Released Defendant Persons and their counsel shall have no responsibility for, and no liability whatsoever with respect to (a) any payment from the Settlement Fund of any type or nature whatsoever, including attorneys' fees and expenses paid to any counsel for Lead Plaintiffs or the Settlement Class or any amounts paid to Lead Plaintiffs; or (b) the allocation among Plaintiffs' Counsel, and/or any other Person who may assert some claim thereto, of any Fee and Expense Award that the Court may make in the Litigation.

## 6.    Conditions of Settlement, Effect of Disapproval, Cancellation, or Termination

6.1.    The Effective Date of the Stipulation, and the Settlement incorporated therein, shall be the date on which all of the following conditions of settlement shall have occurred:

(a)    the Court has entered the Notice Order, as described in ¶2.12 hereof;

(b)    the Settlement Amount has been deposited into the Escrow Account in accordance with ¶2.1 hereof;

(c)      the Court has approved the Settlement as described herein, following notice to the Settlement Class and a Settlement Hearing, as provided by Rule 23 of the Federal Rules of Civil Procedure; and

(d)      the Court has entered the Judgment, in accordance with ¶2.14 hereof and the Judgment has become Final, or in the event the Court enters a judgment in a form other than that provided in ¶2.14 ("Alternative Judgment") and neither Lead Plaintiffs nor the Defendants elect to terminate the Settlement, and such Alternative Judgment becomes Final.

6.2.      Upon the occurrence of all of the events referenced in ¶6.1 hereof, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished.  If any of the conditions specified in ¶6.1(a), ¶6.1(b) or ¶6.1(c) hereof are not met, or if the conditions in ¶6.1(d) are not met and there is no longer any possibility that the conditions in ¶6.1(d) can be met, then the Stipulation shall be canceled and terminated in accordance with ¶6.3 below, unless the Settling Parties, through their counsel, all agree in writing to proceed with the Settlement.

6.3.      Unless otherwise ordered by the Court, in the event the Effective Date does not occur or this Stipulation shall terminate, or be canceled, or otherwise fail to become effective for any reason, then:

(a)      within twenty (20) business days after written notification of such event is sent by Defendants' Counsel to Lead Counsel, Lead Counsel shall cause the Escrow Agent to return to Defendants any monies remaining in the Settlement Fund (including accrued interest) as well as all payments disbursed, including all expenses, costs, and any Fee and Expense Award, excluding only Notice and Administration Expenses that have either been properly disbursed or are due and owing pursuant to ¶2.2 and Taxes that have been paid or that have accrued and will be payable at some later date in accordance with ¶2.10, will be refunded, reimbursed, and repaid by the Escrow Agent in a manner directed by Defendants' Counsel; if said amount or any portion thereof is not returned within such twenty (20) business day period, then interest shall accrue

thereon at the same rate as earned by the Settlement Fund from the date of termination until the date that said amount is returned;

(b)     at the request of Defendants' Counsel, the Escrow Agent or its designee shall apply for any Tax refund owed on the Settlement Fund and pay the proceeds to Defendants as directed in writing by Defendants' Counsel, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund;

(c)     the Settling Parties shall be restored to their respective positions in the Litigation as December 14, 2017, with all of their respective claims and defenses preserved as they existed on that date;

(d)     the terms and provisions of the Stipulation, with the exception of this ¶6.3, shall be null and void and shall have no further force and effect with respect to the Settling Parties, and neither the existence nor the terms of this Stipulation (nor any negotiations preceding this Stipulation nor any acts performed pursuant to, or in furtherance of, this Stipulation) shall be used in this Litigation or in any other proceeding for any purpose; and

(e)     any judgment or order entered by the Court in accordance with the terms of the Stipulation shall be treated as vacated, *nunc pro tunc*.

6.4.     Defendant Insulet, in its sole discretion, may terminate this Stipulation and the Settlement contemplated herein in the event that Persons who otherwise would be Settlement Class Members timely and validly submit requests for exclusion from the Settlement Class ("Request for Exclusion") in accordance with the provisions of the Notice Order, and the Termination Threshold, as that term is defined in a separate agreement countersigned simultaneously herewith by Defendants' Counsel and Lead Counsel ("Supplemental Agreement"), is met.  The Supplemental Agreement shall not be filed with the Court unless (a) a dispute among the Parties concerning its interpretation arises; or (b) the Court requires it be filed.  If either of these circumstances occur, Lead Plaintiffs and Defendants shall request that the Supplemental Agreement and/or any of its terms be disclosed only *in camera* to the Court for purposes of approving the Settlement, and that such disclosure shall be carried out to the fullest extent possible

in accordance with the practices of the Court so as to preserve the confidentiality of the Supplemental Agreement, particularly the Termination Threshold specified in the Supplemental Agreement.

**7.      Miscellaneous Provisions**

7.1.      Pursuant to Paragraph 10 of the Order Concerning the Production and Exchange of Confidential Information (Dkt. No. 78) ("Protective Order") entered in this Litigation:  Within sixty (60) business of the Effective Date, the Settling Parties shall make a good faith effort to destroy all Confidential Discovery Material as defined in the Protective Order.  The receiving Party of the Confidential Discovery Material must submit a written certification to the Party that produced it (and, if not the same person or entity, to the party who designated it confidential) by the 60 day deadline that (1) identifies (by category, where appropriate) all the Confidential Discovery Material that was destroyed and (2) affirms that the receiving Party has not retained any copies, abstracts, compilations, summaries or any other format reproducing or capturing any of the Confidential Discovery Material.  Notwithstanding this provision, pursuant to the Protective Order, the Settling Parties are under no obligation to destroy copies of Confidential Discovery Material that may exist in electronic form in archives, back-up tapes or other media that is not readily accessible and Lead Counsel and Defendants' Counsel are entitled to retain an archival copy of all pleadings, motion papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if such materials contain Confidential Discovery Material.  Any such archival copies that contain or constitute Confidential Discovery Material remain subject to the Protective Order.

7.2.      The Settling Parties: (a) acknowledge that it is their intent to consummate the Settlement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Stipulation and to exercise their best efforts to accomplish and make effective the foregoing terms and conditions of the Stipulation.

7.3.     The Settling Parties intend this Settlement to be a final and complete resolution of all disputes between them.  The Settlement compromises claims which are contested and shall not be deemed an admission by any Settling Party as to the merits of any claim or defense.

7.4.     While Defendants deny that the claims advanced in the Litigation were meritorious and while retaining their right to deny that the claims advanced in the Litigation are meritorious, Defendants in any statement made to any media representative (whether or not for attribution) will not assert that the Litigation was filed or prosecuted in bad faith, nor will they deny that the Litigation was filed and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel.  Defendants may make public disclosure of the Settlement, but may not contradict the foregoing language.  The Settling Parties agree that the amount paid to the Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties and reflect a Settlement that was reached voluntarily, with the assistance of the Mediator, after consultation with competent legal counsel.  The Settling Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Litigation was brought or defended in bad faith or without a reasonable basis.

7.5.     The Settling Parties agree that, and the Judgment will contain a finding that, during the course of the Litigation, the parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

7.6.     This Stipulation, whether or not it is consummated, and any of its provisions, any negotiations, proceedings or agreements relating to the Stipulation or the Settlement, and all acts performed or documents  executed pursuant to or in furtherance of this Stipulation or the Settlement: (a) shall not be deemed to be or used as an admission of, or evidence of, the validity of any Released Claim, any allegation made in the Litigation, or any wrongdoing or liability of Defendants or any Released Defendant Persons; (b) shall not be deemed to be or used as an admission of, or evidence of, any liability, fault, or omission of any of Defendants or any Released Defendant Persons in any civil, criminal, or administrative proceeding in any court,

administrative agency, or other tribunal; (c) shall not be deemed to be or used as an admission of, or evidence of any presumption, concession or admission by any of the Released Plaintiff Persons that any of their claims are without merit, that any of the Released Defendant Persons had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount;  and (d) shall not be construed against any of the Released Persons as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial.

7.7.       Neither this Stipulation nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Stipulation or the Settlement shall be offered or admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, except that Defendants may file or refer to the Stipulation and/or the Judgment in any action that may be brought against them in order to enforce the releases or other protections granted herein or to otherwise support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

7.8.       Defendants warrant that, as to the payments made or to be made by or on behalf of them, at the time of entering into this Stipulation and at the time of such payment they, or to their knowledge any persons or entities contributing to the payment of the Settlement Amount, were not insolvent, nor will the payment required to be made by or on behalf of them render them insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.  This representation is made by each of the Defendants and not by their counsel.

7.9.       In the event of the entry of a final order of a court of competent jurisdiction determining the transfer of money to the Settlement Fund or any portion thereof by or on behalf of Defendants to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited into the Settlement Fund by others, then, at the election of Lead Plaintiffs, Lead Plaintiffs and Defendants

shall jointly move the Court to vacate and set aside the releases given and the Judgment entered in favor of Defendants and the Released Defendant Persons pursuant to this Stipulation, in which event the releases and Judgment shall be null and void, and the Parties shall be restored to their respective positions in the litigation as provided in ¶6.3 above and any cash amounts in the Settlement Fund (less any Taxes paid, due or owing with respect to the Settlement Fund and less any Notice and Administration Costs actually incurred, paid or payable) shall be returned as provided in ¶6.3.

7.10.    This Stipulation may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.  After prior notice to the Court, the Settling Parties may agree to reasonable extensions of time to carry out any provisions of this Stipulation.

7.11.    This Stipulation, including its Exhibits and the Supplemental Agreement, constitutes the entire agreement among the parties hereto and no representations, warranties, or inducements have been made to any party concerning the Stipulation other than the representations, warranties, and covenants contained and memorialized in such documents.  It is understood by the Settling Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Stipulation is entered into may turn out to be other than, or different from, the facts now known to each party or believed by such party to be true; each party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Stipulation shall be in all respects effective and not subject to termination by reason of any such different facts or law.  Except as otherwise provided herein, each Party shall bear its own costs.

7.12.    Lead Plaintiffs have authorized Lead Counsel to execute this Stipulation on behalf of themselves and, to the maximum extent permitted by law, on behalf of the Settlement Class.  Lead Plaintiffs represent and warrant that none of Lead Plaintiffs' claims or causes of action referred to herein or that could have been alleged in the Litigation has been assigned, encumbered, or in any manner transferred in whole or in part.

32

7.13.     Each counsel or other Person executing the Stipulation and any documents prepared in furtherance of the Stipulation on behalf of any party hereto, hereby warrants that such Person has the full authority to do so.

7.14.     The Stipulation may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  The Settling Parties agree that facsimile or scanned signatures shall have the same force and effect as original signatures.

7.15.     The Stipulation shall be binding upon, and inure to the benefit of, the heirs, executors, administrators, trustees, successors and assigns of the Parties, including any corporation or other entity into or with which any party merges, consolidates, or reorganizes.

7.16.     The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and all Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Stipulation.

7.17.     Nothing in this Stipulation, Settlement, or the negotiations or proceedings relating to the foregoing is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including, without limitation, any accountants' privilege, the attorney-client privilege, the joint defense privilege, or the work-product privilege, and all information transmitted between Lead Counsel and Defendants' Counsel in connection with this Settlement shall be inadmissible in any proceeding in any federal or state court or other tribunal or otherwise, in accordance with Rule 408 of the Federal Rules of Evidence as if such Rule applied in all respects in any such proceeding or tribunal.

7.18.     Any written notice required pursuant to or in connection with this Stipulation shall be addressed to Defendants' counsel and Lead Counsel, at the addresses set forth below, and shall be sent by both email and overnight mail.

7.19.     The waiver by one Party of any breach of this Stipulation by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

7.20.    The captions contained in this Stipulation are inserted only as a matter of convenience and in no way define, limit, extend or describe the scope of the Stipulation or the intent of any provision.

7.21.    This Stipulation and the Settlement contemplated by it shall be considered to have been negotiated, executed and delivered, and to be wholly performed, in the Commonwealth of Massachusetts.  Any disputes arising out of or relating to the Stipulation and Settlement, and the rights and obligations of the parties to the Stipulation, shall be construed and enforced in accordance with, and governed by, the substantive laws of the Commonwealth of Massachusetts without giving effect to Massachusetts's choice-of-law principles, except to the extent that federal law requires that federal law govern.  Any dispute relating to this Stipulation or the Settlement shall be brought exclusively in the U.S. District Court for the District of Massachusetts.

7.22.    All of the Exhibits to this Stipulation are material and integral parts hereof and are fully incorporated herein by this reference.

IN WITNESS WHEREOF, the Parties hereto have caused the Stipulation to be executed, by their duly authorized attorneys, dated as of February 8, 2018.

Dated: February ___, 2018

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

By: _____
James A. Harrod
Rebecca E. Boon
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Dated: February __, 2018

**SCOTT+SCOTT ATTORNEYS AT LAW, LLP**

By: _____
William C. Fredericks
Sean Masson
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334

*Attorneys for Lead Plaintiffs and Court-appointed
Lead Counsel for the Class*

Dated: February __, 2018

**GOODWIN PROCTER LLP**

By: _____
Deborah S. Birnbach
Caroline H. Bullerjahn
Katherine G. McKenney
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: (617) 570-111
Facsimile: (617) 321-4397

*Attorneys for Defendants*

Dated: February ___, 2018             **SCOTT+SCOTT ATTORNEYS AT LAW, LLP**


By: _____
William C. Fredericks
Sean Masson
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334


*Attorneys for Lead Plaintiffs and Court-appointed*
*Lead Counsel for the Class*


Dated: February 9, 2018               **GOODWIN PROCTER LLP**


By: _____
Deborah S. Birnbach
Caroline H. Bullerjahn
Katherine G. McKenney
100 Northern Avenue
Boston, Massachusetts 02210
Telephone: (617) 570-111
Facsimile: (617) 321-4397


*Attorneys for Defendants*


35

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 9, 2018, I authorized the electronic filing of the foregoing Stipulation of Settlement and its exhibits with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses denoted on the Electronic Mail Notice List.

  */s/James A. Harrod*
James A. Harrod