UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ARKANSAS TEACHER RETIREMENT SYSTEM, THE CITY OF BRISTOL PENSION FUND, and THE CITY OF OMAHA POLICE AND FIRE RETIREMENT SYSTEM, on behalf of themselves and all others similarly situated, <br>    Plaintiffs <br><br>        v. <br><br> INSULET CORPORATION, DUANE DESISTO, PATRICK J. SULLIVAN, ALLISON DORVAL, and BRIAN ROBERTS, <br>    Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | C.A. No. 15-12345-MLW |

<u>MEMORANDUM AND ORDER</u>

WOLF, D.J.                                                June 25, 2021


I.   SUMMARY

The court has approved the settlement of this class action, creating a common fund in the amount of $19,500,000. Four law firms representing the class have jointly requested an award of 25% of the common fund, $4,875,000, as attorneys' fees. In certain circumstances, such an award would be reasonable and most appropriate. However, in this case, two of the four firms, Bernstein Litowitz Berger & Grossmann LLP ("Bernstein") and Glancy

Prongay & Murray LLP ("Glancy"), made false and misleading statements in support their requests for attorneys' fees. For the reasons explained in this Memorandum, the court is awarding Berstein and Glancy what they would have received pursuant to agreement among counsel for the class if the court awarded 23% of the common fund as attorneys' fees. The analogous statements of the other two firms representing Lead Plaintiffs, Scott + Scott Attorneys at Law LLP ("Scott") and Berman Tabacco ("Berman"), were not deficient. Therefore, they are being awarded what they would have received if the total attorneys' fee award were 25% of the common fund.

II. BACKGROUND

This case is a securities fraud class action subject to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §78u-4. Lead Plaintiffs are Arkansas Teachers Retirement System ("ATRS"), the City of Bristol Pension Fund ("Bristol"), and the City of Omaha Police and Fire Retirement System ("Omaha"). In 2018, ATRS was the Lead Plaintiff in another PSLRA class action pending before this court, <u>ATRS v. State Street Bank and Trust Company</u>, C.A. No. 11-10230-MLW ("<u>State Street</u>"). Lead Counsel for the class in the instant case are Bernstein and Scott.

In <u>State Street</u>, in 2017, this court appointed a Master to investigate the accuracy and reliability of representations made by class counsel in connection with an attorneys' fees award of

2

$75,000,000. See C.A. No. 11-10230, Docket No. 173. In requesting that award each of the firms involved provided the court with its purported "lodestar," which they knew the court would use to test the reasonableness of the fee request. See State Street, 2020 WL 949885 (D. Mass. Feb. 27, 2020) at *2-3, *14, *16-17, *29, *32, *35, *37-38, *48-52. The court appointed the Master in part because several counsel had represented that "the hourly rates for the attorneys and professional support staff in my firm [that were used to calculate what the firm represented to be its "lodestar,"] are the same as my firm's regular rates charged for their services . . . ." State Street, 232 F. Supp. 3d 189, 192 (D. Mass. 2017). "In view of the well-established jurisprudence and the representations of counsel, the court understood that in calculating the lodestar plaintiffs' law firms had used the rates they each customarily actually charged paying clients for the services of each attorney . . . ." Id. However, the court subsequently learned that the class counsels' firms worked exclusively, or almost exclusively, on a contingent fee basis and no client had actually paid what were represented to be the "regular rates charged." Id. at *6-7, *9, *32, *37-38. The implications of class counsels' misleading representations were among the matters the Master was appointed to address.

At a March 9, 2018 hearing in the instant case on plaintiffs' motion for preliminary approval of a proposed settlement, in

3

response to a question from the court, Bernstein partner James A. Harrod represented that he was "familiar with the issues that prompted [this court] to appoint a special master to review the award of attorneys' fees in the Arkansas Teachers v. State Street case." Mar. 9, 2018 Transcript ("Tr.") (Docket No. 120) at 13-14. Nevertheless, in a sworn declaration filed on June 1, 2018, in support of Lead Counsel's request for an award of attorneys' fees in the amount of $4,875,000, representing 25% of the $19,500,000 common settlement fund, Mr. Harrod wrote concerning the calculation of Bernstein's lodestar that "[t]he hourly rates for the attorneys . . . in my firm included in Exhibit 1 are the same as the regular rates charged for their services, which have been accepted in other securities or shareholder litigation." Docket No. 129-3 at ¶4. At the August 2, 2018 hearing at which the proposed settlement was approved, Mr. Harrod stated that Bernstein works on a contingent fee basis and did not have any clients who had actually paid the hourly rates represented in his affidavit to be the regular rates charged for the services of the attorneys who worked on this case. See Aug. 2, 2018 Tr. (Docket No. 136) at 38. Mr. Harrod also stated that the preparation of the fee petition had been supervised by ATRS' Executive Director George Hopkins, who was also centrally involved in the State Street case. Id. at 31-32, 57.

4

A partner in another firm seeking part of the requested award of attorneys' fees, Joshua L. Crowell of Glancy Prongay & Murray LLP ("Glancy"), also stated in his sworn declaration that with regard to Glancy's lodestar "[t]he hourly rates for the attorneys . . . in my firm included in Exhibit 1 are the same as the regular rates charged for their services, which have been accepted in other securities or shareholder litigation." Docket No. 129-5, ¶3. However, at the August 2, 2018 hearing Mr. Crowell too stated that his firm worked almost exclusively on a contingent fee basis and had very few paying clients. See Aug. 2, 2018 Tr. at 37. He could not say that any client had ever paid what were represented to be the regular rates charged for the Glancy attorneys who worked on this case. Id. at 38.[1]

A third firm seeking attorneys' fees in this case, Berman Tabacco, ("Berman") stated with regard to its lodestar calculation that "[t]he hourly rates for the attorneys included in Exhibit 1 are their customary rates; my firm's hourly rates have been accepted in other securities litigation." Declaration of Steven J. Buttacavoli (Dkt. No. 129-6) at ¶4. Berman also worked

---

[1] With regard to Glancy, as well as other firms seeking attorneys' fees, Mr. Harrod and William Fredericks of Scott represented under oath that "relevant lodestar calculations [were] based on that firm's current billing rates." Joint Declaration (Dkt. No. 129) at ¶80. However, none of the firms regularly billed clients or had actual current billing rates.

5

primarily on a contingent fee basis. See Aug. 2, 2018 Tr. at 39. Berman's representative at the August 2, 2018 hearing did not know what rates the firm charged clients in the few cases in which it billed clients at an hourly rate. Id.

The fourth firm seeking attorneys' fees, Scott, also worked primarily on a contingent fee basis. Id. at 38-39. With regard to the calculation of its lodestar, Scott stated that "[t]he hourly rates for the attorneys and professional support staff in my firm included in Exhibit 1 are the same as the regular rates which have been accepted in other securities or shareholder litigation." Declaration of William C. Fredericks (Dkt. No. 129-4) at ¶3.

At the August 2, 2018 hearing, Mr. Harrod said that he recalled the court asking him at the preliminary approval hearing if he was familiar with the State Street Order in which the court expressed its inclination to appoint a Master in part because of possible misrepresentations concerning whether hourly rates reportedly regularly charged were actually ever charged to clients. See Aug. 2, 2018 Tr. at 40. He also stated that he had read that Order. Id. However, he said the court's concern about the reliability of the representations concerning the regular rates charged "didn't pop to [his] mind." Id. at 47.

In essence, in 2017, in a series of published decisions in State Street, the court appointed a Master to investigate the reliability of representations made in connection with a request

6

for attorneys' fees in a class action in part because certain firms that worked exclusively, or almost exclusively, on a contingent fee basis represented that the rates used to calculate the lodestars that would be used to test the reasonableness of the requested fee award were "the same as [the firms'] regular rates charged for their services." State Street, 2020 WL 949885, at *32-37. At the hearing at which the settlement in this case was preliminarily approved, before any application for attorneys' fees was filed, the court asked whether counsel were aware of those decisions and was assured that they were. Nevertheless, two of the firms in this case used the language concerning their "regular rates charged" that this court questioned in 2017, and found in 2020 to be false and misleading when used by several firms in State Street. See State Street, 2020 WL 949885, at *32-35, *37, *48, *54-55. Moreover, this occurred after George Hopkins, the Executive Director who acted for Arkansas Teacher in State Street, supervised preparation of the fee petition in this case and advised class counsel concerning it. See Aug. 2, 2018 Tr. at 31-32, 44.

III. THE APPLICABLE STANDARDS

The usual standards employed in deciding the amount of attorneys' fees to be awarded from a common fund were described in detail by this court in its February 27, 2020 State Street decision, see 2020 WL 949885, at *2, *12-14, *29, and are being employed here.

7

In summary, the factors to be considered in awarding attorneys' fees from a common fund include:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

Id. at *2, *13, *29; see also Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000).

"Within the First Circuit, courts generally award fees in the range of 20-30%, with 25% as the benchmark.'" Id. at *12 (quoting Bezdek v. Vibram USA Inc., 79 F. Supp. 3d 324, 349-50 (D. Mass. 2015)); see also In re Lupron Mktg & Sales Practices Litig., 2005 WL 2006833, *5 (D. Mass. Aug. 17, 2005). However, "'[t]he district court may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." Id. (quoting In re Pac. Enters. Secs. Litig., 47 F.3d 373, 379 (9th Cir. 1995)).

"In addition to considering whether a requested award is reasonable based on the customary [] factors and any others that are relevant in the unique circumstances of the case, courts in the First Circuit and nationally regularly check the requested award against the 'lodestar' to evaluate whether such an award would be reasonable." Id. at 14. "A lodestar is properly calculated by multiplying the number of hours reasonably spent on the litigation by a reasonable hourly rate." Id. (citing cases).

8

Reasonable rates are calculated according to the prevailing rate in the community. Id. (citing Blum v. Stenson, 465 U.S. 886, 895 (1984)). "'The rate that private counsel *actually* charges for her services, while not conclusive, is a reliable indicium of market value.'" Id. at *48 (quoting United States v. One Star Sloop Sailboat, 546 F.3d 26, 40 (1st Cir. 2008) (emphasis added)).

In exercising its equitable authority to award attorneys' fees from a common fund, the court acts as a quasi-fiduciary for the class. See In re Fidelity/Micron Secs. Litig., 167 F.3d 735, 736 (1st Cir. 1999); In re Agent Orange Prod. Liab. Litig., 818 F.2d 216, 222 (2d Cir. 1987); In re Relafen Antitrust Litig., 360 F. Supp. 2d 166, 192-94 (D. Mass. 2005) (collecting cases). As this court wrote in State Street:

> This fiduciary duty can be difficult to discharge because "the presentation of the settlement for judicial approval is nonadversarial in nature: the prior competing parties (class counsel and the defendants) have resolved their differences and are now in harmony in seeking the court's approval." 4 William B. Rubenstein, Newberg on Class Actions § 13:40 (5th ed. Dec. 2019 Update). Ultimately, courts have to rely on counsel, particularly plaintiffs' counsel, to provide the accurate and complete information necessary for the court to exercise properly its discretion in awarding attorneys' fees. The Massachusetts Rules of Professional Conduct impose on attorneys seeking a fee award in a class action the duty to do so. See Mass. R. Prof. C. 3.3.

State Street, 2020 WL 949885, at *12; see also id. at 13 (explaining that Rule 3.3 of the Massachusetts Rules of Professional Conduct treats a request for attorneys' fees from a

9

common fund as an ex parte proceeding, imposing a heightened duty of candor on plaintiffs' counsel).

"In view of the fact that the adversary process is not operating when attorneys representing a class seek a fee award, it is especially important that they satisfy their duty of candor to the court." Id. at *13, *31. Therefore, to promote an important public policy, "[i]f counsel in a class action fail in their duty to be candid with the court, it is permissible and appropriate for the court to take this into account in deciding what amount within the reasonable range is most appropriate to award as attorneys' fees." Id. at *2; see also id. at *13, *32.

As class counsel acknowledged, see Aug. 2, 2018 Tr. at 57, after the court decides the most appropriate amount to award as attorneys' fees, it "'has the ultimate authority to determine how the aggregate fee is to be allocated among counsel.'" State Street, 2020 WL 949885, at *53 (quoting 5 Rubenstein, Newberg on Class Actions §15:23).

IV. DISCUSSION

In this case, absent important public policy considerations, the other traditional factors would cause the court to award 25% of the common fund, $4,875,000, as attorneys' fees, and allow the four firms sharing them to divide the fee award in proportion to their respective lodestars as they agreed. See Aug. 2, 2018 Tr. at 34:20-28. However, as described earlier, in 2018, in

calculating and presenting to the court their lodestars, Bernstein and Glancy each represented that they had used the "regular rates charged for their [attorneys'] services" and this was not true.

As also described earlier, essentially the same false and misleading statement was made by several firms in State Street. Those statements contributed to this court's decision to appoint the Master and, ultimately, to award attorneys' fees in the amount of 20% of the common fund, $60,000,000, rather than the 25%, $75,000,000, requested. See State Street, 2020 WL 949885, at *6-10, *32-35, *37-38, *46.[2] As this court wrote in State Street:

> In a detailed Memorandum, [the Thornton Law Firm] asserts that the language used in this case characterizing the rates attributed to attorneys as each firm's "regular rates charged for their services ..." is "very common and is somewhat of a standard practice," although often the representation is not true. Dkt. No. 530 at 40. Thornton supports this assertion with two volumes of exhibits. See Dkt. No. 530-4 (attaching 73 exhibits). Thornton correctly cites another ATRS class action before this court, Ark. Teachers Ret. Sys. v. Insulet Corp., No. 15-cv-12345-MLW (D. Mass.), in which two of plaintiff's firms used the same language used by Labaton, Thornton, and Lieff in this case and, in response to questions from the court, acknowledged that

---

[2] In State Street, it was the repeated egregious misconduct of two firms – Labaton Sucharow LLP and The Thornton Law Firm – that caused the court to find it was most appropriate to make an award of attorneys' fees at the low end of the presumptive reasonable range, 20%. See State Street, 2020 WL 949885, at *10, *46-47; see also March 12, 2021 Mem. and Order Denying Mot. to Stay (Case No. 11-10230, Docket No. 680) at 25-27, 50-51. False and misleading representations concerning what were purportedly the rates regularly charged was only one of the deficiencies in the firms' conduct. See id.

11

> they had no paying clients because they work exclusively, or almost exclusively, on a contingent-fee basis. See id. at 41. Thornton cites many other cases before this court, before other judges in the District of Massachusetts, and throughout the United States in which the same or substantially similar statements, which are likely false or misleading, have been made by other firms that specialize in representing plaintiffs in class actions. See id. at 42-58. Therefore, it appears the lodestar check that district judges regularly employ in making percentage of the common fund awards is often fundamentally flawed and, at a minimum, that the representations of counsel should be scrutinized, rather than accepted on the assumption that they satisfy the requirements of Rule 11 [of the Federal Rules of Civil Procedure].

State Street, 2020 WL 949885, at *48 (footnote omitted).

The fact that the false and misleading representations made by Bernstein and Glancy concerning the "regular rates charged by their attorneys" may be common, does not mean that they should be ignored or excused. Rather, the fact that they were made after the court indicated that counsel should be alert to the issues that prompted the appointment of the Master in State Street reinforces the importance of assuring that such deficient conduct has consequences in order to encourage counsel to be scrupulous in satisfying their duty of candor to the court, particularly in what is deemed to be an ex parte request for attorneys' fees.

As the court explained in State Street, "[c]ourts have a duty to promote and protect the integrity of judicial proceedings." State Street, 2020 WL 949885, at *13. Therefore, in exercising its equitable authority to award attorneys' fees, it is permissible

and appropriate for the court to take misleading representations of counsel into account in making a fee award. See id.

If Bernstein and Glancy were the only firms sharing the fee award, the court would award as attorneys' fees 23%, rather than 25%, of the $19,500,000 common fund, meaning $4,485,000, plus interest. However, this would unfairly penalize Scott and Berman, which did not err in their representations to the court with regard to the rates each used to calculate their respective lodestars.[3] To the contrary, Scott's statement that "the hourly rates for the attorneys . . . in my firm . . . are the same as the regular rates which have been accepted in other securities or shareholder litigation" was not misleading. If true, this is a statement that could and should have been made by Berman and Glancy too.

Accordingly, the court is exercising its equitable authority to allocate the fee award that it is making among counsel, and awarding Scott and Berman what each would have received, pursuant to their agreement with other counsel for the class, if the court made a total award of 25% of the $19,500,000 common fund. It is awarding Bernstein and Glancy what they would have received if the total award were 23% of the common fund. More specifically, based

---

[3] Scott did state that the other firms' lodestars were based on their "current billing rates," when none of the firms had rates they used regularly to bill clients. See footnote 1, supra.

on the calculations included in Exhibit 1 hereto, the court is awarding attorneys' fees in a total amount of $4,608,240, plus interest, allocated as follows: $2,264,925 plus interest to Bernstein; $802,815 plus interest to Glancy; $1,457,625 plus interest to Scott; and $82,875 plus interest to Berman.

The court is also awarding counsel the costs and expenses in the amount requested, $362,954.28, which the court finds to be reasonable.

V. SERVICE AWARDS

The PSLRA gives the court the authority to make service awards to representatives of the class to reimburse them for their reasonable costs and expenses in connection with the litigation and settlement of the case. See 15 U.S.C. §78u-4(a)(4). However, whether or not to make such an award is within the court's discretion. See S. Rep. No. 104-98, at 10 (1995) ("[T]he Committee grants courts discretion to award the lead plaintiff reimbursement for 'reasonable costs and expense'"); H.R. Conf. Rep. No. 104-369 (1995) ("The Conference Committee . . . grants the courts discretion to award fees [to lead plaintiffs]"). See also Swack v. Credit Suisse First Bos., LLC, 2006 WL 2987053, at *5 (D. Mass. Oct. 4, 2006) (discussing discretionary standard).

Bristol and Omaha are two of the three class representatives in this case. Each has since the outset been represented by Scott, whose submission to this court concerning its own billing rates

14

was not misleading. Bristol's Declaration (Docket No. 129-8) and Omaha's Declaration (Docket No. 129-9) each persuade the court that it should exercise its discretion to make service awards to them in the amounts requested. Therefore, the court is ordering that from the common fund Bristol receive $14,950 and Omaha receive $13,975.

ATRS requests a service award in the amount of $4,995. See Decl. of Rod Graves (Dkt. No. 129-7) at 5. According to its Declaration, among other things, ATRS undertook to review the reasonableness of the proposed award of attorneys' fees and evaluated lead counsel's fee request. See id. at ¶¶5, 10. That review and evaluation was done, at least in part, by George Hopkins, the Executive Director of ATRS who acted for ATRS in State Street. See Aug. 2, 2018 Tr. at 31-32, 44.

Nevertheless, Bernstein, the firm that ATRS retained for this case and that ATRS was reportedly monitoring, made false and misleading statements to the court that were comparable to the false and misleading statements that ATRS' counsel made to the court in State Street. Bernstein did so after this court appointed a Master in State Street in part because, as ATRS knew, of concern about the reliability of such statements.

In State Street, the court awarded ATRS $10,000 less than requested because it found that ATRS was "deficient in directing and supervising" its counsel, as exemplified by its conduct in

15

connection with their request for attorneys' fees. <u>State Street</u>, 2020 WL 949885 at *56. In this case, the court is exercising its discretion to make no service award to ATRS in the hope that this frequent lead plaintiff, at least, will be encouraged to supervise its counsel properly in future cases.

VI. CONCLUSION

In <u>State Street</u>, this court concluded that to discharge their fiduciary duties, "it is important that judges scrutinize . . . motions for awards of attorneys' fees, even - indeed especially - when such motions are not opposed." <u>State Street</u>, 2020 WL 949885 at *57. The court has done so in this case. It is disappointed to have discovered that deficiencies in the conduct of counsel that contributed to the appointment of the Master in <u>State Street</u> occurred in this case as well.

The court hopes that its decision in this case will be another reminder to counsel that their representations with regard to requests for attorneys' fees, among other things, will be scrutinized by judges, and that there will be consequences if they have not satisfied their duty to provide the court information that is accurate, complete, and reliable.

This decision should also be a reminder that, as this court wrote in <u>State Street</u>, "[c]andid, capable counsel will easily survive such scrutiny." <u>State Street</u>, 2020 WL 949885 at *57. The

court hopes and trusts that in the future all counsel will prove to be candid and capable in their presentations to the court.

VII. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (Docket No. 127) is ALLOWED in the manner described in this Memorandum and Order. More specifically, $4,608,240, plus interest, is awarded to counsel for plaintiffs as reasonable attorneys' fees. From the $4,608,240, a total of $2,264,925, plus interest, shall be paid to Bernstein; $802,815, plus interest, shall be paid to Glancy; $1,457,625, plus interest, shall be paid to Scott; and $82,875, plus interest, shall be paid to Berman. In addition, $362,954.28, plus interest, is awarded to counsel for plaintiffs as reasonable litigation expenses.

2. $28,925, plus interest, is awarded to Bristol and Omaha P&F as service awards. More specifically, $14,950, plus interest, shall be paid to Bristol, and $13,975, plus interest, shall be paid to Omaha.

_[signature]_
UNITED STATES DISTRICT JUDGE